# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TANYA L. ISAHAROV,

     Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant.

Case No.: 2:17-cv-01958-APG-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 15, 21

This Report and Recommendation is made to the Honorable Andrew P. Gordon, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff filed a Motion for Remand. (ECF No. 15.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 21, 22.) Plaintiff filed a reply. (ECF No. 23.) When Plaintiff's motion was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security Administration. The new Acting Commissioner is Andrew Saul, and the caption now reflects this change.

After a thorough review, it is recommended that Plaintiff's motion be denied, and the Acting Commissioner's cross-motion be granted.

## I. BACKGROUND

On August 14, 2013, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning March 15, 2013.

1  (Administrative Record (AR) 246-260.) She then amended her alleged onset date to June 29, 2012.

2  (AR 281.) The applications were denied initially and on reconsideration. (AR 172-189.)

3         Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 191-192.) ALJ

4  Teresa L. Hoskins Hart held a hearing on October 1, 2015. (AR 50-88.) Plaintiff, who was

5  represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was

6  also taken from a vocational expert (VE). On February 3, 2016, the ALJ issued a decision finding

7  Plaintiff not disabled. (AR 22-40.) Plaintiff requested review, and the Appeals Council denied the

8  request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-4.)

9         Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff

10  argues the ALJ erred because: (1) the ALJ improperly rejected medical opinions of her treating

11  providers that establish her mental impairments meet or equal Listed Impairment 12.04; (2) the

12  ALJ's credibility determination is legally deficient; and (3) the ALJ found Plaintiff was limited to

13  semi-skilled or unskilled work, but, then the ALJ concluded Plaintiff could perform past relevant

14  work that is classified by the Dictionary of Occupational Titles (DOT) as skilled; and (4) the ALJ's

15  hypothetical to the VE was incomplete as it did not contain the limitations as opined by her treating

16  mental health providers.

17         The Acting Commissioner, on the other hand, argues: (1) the ALJ's finding that Plaintiff

18  does not meet Listed Impairment 12.04 is correct because the ALJ properly gave little weight to

19  Plaintiff's treating providers' opinions, Plaintiff does not challenge the assessment of the other

20  relevant medical opinions, and she does not otherwise prove she satisfies the requirements of

21  Listed Impairment 12.04; (2) the ALJ's credibility determination was proper; (3) the ALJ's finding

22  that Plaintiff could perform past relevant work as actually performed is supported by substantial

23

evidence and is consistent with the ALJ's residual functional capacity finding; and (4) the ALJ's hypothetical to the VE was complete.

## II. STANDARDS

### A. Disability Process

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

### B. Five-Step Evaluation of Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his

or her previous work but also, any other work which exists in the national economy, considering his or her age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42,

5

144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the grids.[1] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## C. Judicial Review & Substantial Evidence

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740

---

[1] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

6

F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through June 30, 2012, and had not engaged in substantial gainful activity since the amended alleged onset date of June 29, 2012. (AR 27.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: carpal tunnel syndrome, status post release, obesity, bipolar disorder, depressed with psychosis and post-traumatic stress disorder (PTSD). (AR 28-30.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 30-31.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she could: frequently crawl or climb; occasionally climb ladders, ropes or scaffolds; frequently perform handling and fingering; should avoid concentrated exposure to extreme cold, heat or hazards; has moderate limitation in performing complex or detailed tasks and so be limited to performing simple, repetitive tasks of unskilled and semi-skilled tasks, which involve no more than occasional, routine and brief interaction with others in a work setting. (AR 31-36.)

The ALJ then concluded Plaintiff was able to perform her past relevant work as a painter. (AR 37-38.)

Alternatively, at step five, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: routing clerk, marketing clerk, and cleaner. (AR 38-39.) As a result, the ALJ found Plaintiff not disabled from June 29, 2012, through the date of the decision. (AR 39.)

**B. Opinions of Plaintiff's Treating Mental Health Providers & Listed Impairment 12.04**

Plaintiff argues that the ALJ erred in giving little weight to the opinions of her treating psychiatrist, Dr. Alex Del Rosario, and her treating counselor, Leslie Corcoran, Marriage and Family Therapist (MFT). She contends that those opinions establish that her bipolar disorder meets the requirements of Listed Impairment 12.04.

The Acting Commissioner contends that the ALJ set forth sufficient reasons for giving the opinions little weight; that Plaintiff does not contest the opinions of the other medical providers,

including the opinions of State agency reviewing psychologists Pastora Roldan, Ph.D. (AR 98-99) (at the initial level), Susan Kotler, Ph.D., (AR 135-36) (on reconsideration), and the opinions from a State agency psychiatric evaluation performed by Robyn Donaldson, Ph.D. (AR 588-594), which support the ALJ's findings; and, that Plaintiff has not otherwise proven she meets the requirements of Listed Impairment 12.04.

To succeed on her argument that the ALJ erred in finding she did not meet or equal Listed Impairment 12.04, Plaintiff must first establish that the ALJ's reasons for giving little weight to her treating mental health providers' opinions were legally insufficient. Therefore, the court will now address the reasons the ALJ gave for rejecting those opinions, and then, if necessary, will determine whether Plaintiff proves that she otherwise meets the requirements of Listed Impairment 12.04.[2]

**1. Standard for Evaluating Medical Opinions**

The Social Security Administration amended its regulations regarding evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a),

---

[2] At the time Plaintiff filed her claim, to meet the requirements for Listed Impairment 12.04, she was required to establish the criteria set forth in paragraph A (the medical/diagnostic criteria), and either the criteria in paragraph B or paragraph C. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00.A, § 12.04 (effective September 6, 2013 to December 2, 2013).To satisfy the paragraph B criteria, she had to demonstrate at least two of the following: "1. Marked restriction in activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]"*Id* at § 12.04.B. For paragraph C, she must have had the chronic affective disorder for at least two years and: (1) repeated episodes of decompensation, each of extended duration; (2) a change in mental demands/environment would cause decompensation; or (3) history of a year or more of inability to function outside highly structured living arrangement that needs to be continued. *Id*. at § 12.04.C. Repeated episodes of extended duration means "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks." *Id*. § 12.00.C.4.

416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).[3] Even when the treating sources are not given controlling weight, they are still entitled to deference. *Id*.

The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id*. (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   To reject a treating or examining doctor's opinion that is contradicted by another doctor's

2   opinion, as is the case here[4], the ALJ must "provid[e] specific and legitimate reasons that are

3   supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks

4   omitted). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

5   thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

6   and making findings.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "[E]ven

7   when contradicted, a treating or examining physician's opinion is still owed deference and will

8   often be 'entitled to the greatest weight … even if it does not meet the test for controlling weight.'"

9   *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

10      The Ninth Circuit has held that where an ALJ provides valid reasons supporting the record

11  for discrediting a medical provider's opinions or claimant's testimony, but also sets forth one or

12  more invalid reasons, then the error with respect to the invalid reasons may be harmless. *See*

13  *Molina v. Astrue*, 674 F.3d 1104, 1115-16 (9th Cir. 2012).

14      **2. Ms. Corcoran**

15          **a. Ms. Corcoran's Opinions**

16      Ms. Corcoran completed a questionnaire on March 3, 2015, setting forth her opinions

17  regarding Plaintiff's mental impairments. (AR 737-742.) She asserted that Plaintiff could not cope

18  with any job. She opined that Plaintiff was unable to meet competitive standards for: understanding

19  and remembering and carrying out detailed instructions, dealing with the stress of semi-skilled or

20  skilled work, and traveling to unfamiliar places. In addition, Plaintiff was seriously limited, but

21  not precluded, in her ability to set realistic goals or make plans independently of others. Plaintiff

22

23  [4] Dr. Del Rosario's and Ms. Corcoran's opinions are contradicted by those of State disability examining psychologist Dr. Donaldson, and state disability reviewing psychologists Drs. Roldan and Kotler.

had limited, but satisfactory ability to interact appropriately with the general public and adhere to basic standards of neatness and cleanliness. Plaintiff was seriously limited, but not precluded, in her ability to maintain socially appropriate behavior. Ms. Corcoran concluded that Plaintiff had marked functional limitation in activities of daily living and difficulty maintaining social functioning.

Ms. Corcoran also opined that Plaintiff had extreme difficulty maintaining concentration, persistence or pace, and had four or more episodes of decompensation within a 12-month period for at least two weeks each in duration in January, March, June and August of 2014, and February of 2015. She found Plaintiff was seriously limited in her abilities to: remember work-like procedures, understand and remember short and simple instructions, maintain regular attendance and be punctual, sustain ordinary routine without special supervision, complete a normal work day and week with interruptions from psychologically based symptoms, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and be aware of normal hazards and take appropriate precautions.

Ms. Corcoran further opined that Plaintiff was unable to meet competitive standards to: maintain attention for a two-hour segment; work in coordination with or proximity to others without being unduly distracted; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and, respond appropriately to changes in routine work setting and deal with normal work stress. Finally, Ms. Corcoran stated that Plaintiff would, on average, miss more than four days of work a month.

### b. ALJ's Findings

With respect to Ms. Corcoran's opinions, the ALJ stated that a finding of disability is an ultimate issue reserved to the Commissioner. (AR 36.) In addition, the ALJ found Ms. Corcoran

not to be an acceptable medical source, and as such, Ms. Corcoran's opinions were not afforded controlling weight, but were considered. (AR 36.) The ALJ then stated that she gave Ms. Corcoran's opinions little weight because she was not an acceptable medical source; she had not treated Plaintiff for a continuous 12-month period; and, her opinions were inconsistent with the medical record which indicated no episodes of decompensation and minimal mental status findings, no significant social outbursts, and high activities of daily living. (AR 36.)

### c. Analysis

The court will first address the ALJ's finding that Ms. Corcoran was not an acceptable medical source and the impact of that statement on the ALJ's conclusions, if any. The Social Security Administration amended its regulations to expand the definition of acceptable medical sources for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). Ms. Corcoran is a marriage and family therapist. For claims filed both before and after March 27, 2017, a psychologist would qualify as an acceptable medical source, but not a marriage and family therapist. Instead, Ms. Corcoran is considered an "other source," and her opinions are not entitled to the same deference as acceptable medical sources. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. § 404.1527; SSR 06-03P, 2006 WL 2329939). While SSR 06-03P was rescinded to be consistent with the March 27, 2017 regulation amendments, it still applies to Plaintiff's claim which was filed prior to that date.

"Other sources" may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, at *2. Under the regulations, an ALJ must consider all relevant evidence, including that from medical sources who are not acceptable medical sources. *Id.* at *4. In evaluating the evidence from "other sources," the ALJ may apply the following factors: how long the sources has known/seen the claimant; consistency with other

1  evidence; whether the opinion is supported by relevant evidence; how well the opinion is

2  explained; whether the source has a specialty or area of expertise regarding the impairment; and

3  any other factors that support/refute the opinion. *Id*.

4      "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may

5  justify giving that opinion greater weight than an opinion from a medical source who is not an

6  'acceptable medical source[.]'" *Id*. at *5. Nevertheless, it is possible that an opinion from an "other

7  source" may be given more weight. As an example, SSR 06-03P states that this might be the case

8  where the source has seen the claimant more than the treating source and has given better

9  supporting evidence and a better explanation for the opinion. *Id*.

10      The Ninth Circuit has held that "[t]he ALJ may discount testimony from these 'other

11  sources' if the ALJ 'gives reasons germane to each witness for doing so." *Molina,* 675 F.3d at 1111

12  (quoting *Turner v. Comm'r of Soc. Ec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). These reasons must

13  still be substantiated by the record. *Id*.

14      Under SSR 06-03P, it was appropriate for the ALJ to comment that Ms. Corcoran was not

15  an acceptable medical source. The ALJ nevertheless considered and provided reasons for rejecting

16  Ms. Corcoran's opinions, which is consistent with SSR 06-03P and Ninth Circuit authority. The

17  court will now determine whether the ALJ set forth germane reasons supported by the record for

18  assigning little weight to Ms. Corcoran's opinions.

19      Initially, the court agrees with Plaintiff that Ms. Corcoran did not simply opine on the

20  ultimate issue of disability, but instead discussed specific functional limitations and the reasons

21  for those determinations.

22      Next, the ALJ stated that Plaintiff had not treated with Ms. Corcoran for a continuous 12-

23  month period. Under Social Security Ruling 06-03P, in considering opinion evidence from a non-

acceptable medical source, the ALJ may consider how long the source has known and how frequently the source has seen the individual. Plaintiff started treating with Ms. Corcoran on August 29, 2013, and saw her again on September 4, 11, 17, 2013, then on January 21, 2014, March 19, 2014, April 1, 2014, May 12, 2014, December 17, 2014, and completed the questionnaire with her opinions on March 3, 2015. Thus, she had seen Plaintiff nine times between August 2013 to December of 2014. Plaintiff is correct that there is no requirement that the claimant treat for a continuous 12-month period; however, the length of treatment relationship was a legitimate factor for the ALJ to take into consideration in determining the weight to afford to Ms. Corcoran's opinions.

Finally, the ALJ found that Ms. Corcoran's opinions were inconsistent with the medical record, which the ALJ found indicated no episodes of decompensation, minimal mental health status findings and no significant social outbursts.

With respect to the episodes of decompensation, they must have been repeated, which means three in a year, or on average, once every four months, and they must have each lasted two weeks. Ms. Corcoran cited episodes of decompensation occurring in January 2014, March 2014, June 2014, August 2014, and February 2015.

Plaintiff was hospitalized and brought to the emergency room regarding her psychotic symptoms January 13 and 14, 2014. She was admitted to the hospital on a legal hold related to an incident where she was hearing things and thought her neighbor was going to kidnap her daughter. (AR 649, 675.) When she was initially received on January 13, 2014, she was depressed, with anxiety, flat affect, and auditory hallucinations, with slightly slurred speech. (AR 675-76, 683.) The following day, she admitted that the incident was related to her use of methamphetamine. (AR 711.) At that time, she was doing much better, was pleasant, cooperative and had good eye

1 contact and regular speech, was goal directed and coherent. Her attention and concentration were

2 fair. Her insight, judgment and impulse control were adequate. She was discharged. (AR 712.)

3 When she saw Ms. Corcoran a week later, she relayed that she was moving in with her brother

4 because she had been arguing with her boyfriend's mother (AR 848), but there is no other evidence

5 of an episode of decompensation of sufficient duration in January of 2014.

6       In March of 2014, she discussed with Ms. Corcoran her plans of moving out and issues

7 with her boyfriend and his family, but there does not appear to be evidence of an episode of

8 decompensation of extended duration in that month. (AR 646, 845.)

9       While Ms. Corcoran references June of 2014, there are no records to support an episode of

10 decompensation during that time period.

11       On August 6, 2014, Plaintiff presented to Dr. Del Rosario as tearful when she discussed

12 her boyfriend using drugs and selling their personal property. Her medications were continued.

13 (AR 813.) The next entry is not until September 15, 2014, when she saw Dr. Del Rosario, but there

14 is no specific evidence of an episode of decompensation lasting two weeks in August of 2014.

15       Nor are there records that evidence an episode of decompensation in February of 2015.

16       Therefore, the ALJ's conclusion that Ms. Corcoran's opinions were inconsistent with the

17 record in terms of episodes of decompensation is well supported.

18       Next, the court finds the ALJ's conclusion that there were minimal mental health status

19 findings is also supported by the record.

20       The first records raising Plaintiff's mental health issues are from September and October

21 of 2012, when she complained of depression following the birth of her daughter, and she was

22 started on Lexapro. (AR 777-778.) By the end of October 2012, her depression was described as

23 mild and improving while on Lexapro. (AR 774.) It was described as mild and improving again in

December of 2012, and it was noted that her medication would be increased, and if that did not help she might be switched to another drug. (AR 771-72.) Records from December 13, 2012, described her as having a moderate mood disorder. (AR 586.) Her primary care doctor noted on December 23, 2012, that her depression was mild and improving while on Lexapro. (AR 774.) She complained of anxiety and depression and having panic attacks on February 11, 2013, but her mood and affect were described as normal overall. She was prescribed Ativan and was instructed to follow up in a month. (AR 436-37.) In her subsequent appointments with her primary care provider, she indicated her medications were not helping, and requested referrals to psychiatry. Her medication was adjusted, but there are no mental status notes beyond that. (AR 986, 586, 566.)

When she initially saw Ms. Corcoran, it was noted that she was fearful, anxious, depressed, hopeless, confused, had flight of ideas, her immediate recall was impaired, but she had fair judgment. (AR 854.) On September 4, 2013, Plaintiff rated her depression at a five on a scale of one to ten, and as worsening. She discussed issues with her boyfriend and his mother and a desire to move out. Ms. Corcoran described Plaintiff as having a fear of authority, fear of isolation, frightened of angry people and personal criticism, and an overdeveloped sense of responsibility, avoidance of feelings regarding her traumatic childhood experiences, low self-esteem, strong dependency needs, and was terrified of abandonment. (AR 851-52.) On September 11, 2013, she was still depressed about her boyfriend's mother's hostility toward her. (AR 850.) On September 17, 2013, she and her boyfriend discussed issues with her boyfriend assisting with the baby, and their relationship with his mother. (AR 849.)

When Plaintiff saw Dr. Del Rosario on October 22, 2013, she had normal eye contact, intact thought processes, intact attention and concentration, was cooperative with spontaneous demeanor, she had normal thought content, an appropriate affect, present insight, denied

hallucinations, had an anxious mood, but fair judgment. (AR 640.) When she saw Ms. Corcoran again following her hospitalization in January of 2014, she discussed the prior events, and having ups and downs with her boyfriend, and issues with the boyfriend's mother. (AR 847.)

When she was evaluated by Dr. Donaldson at the end of January 2014, Dr. Donaldson found she had normal eye contact, she had spontaneous, slightly inhibited speech, with linear, relevant and reasonably logical thought processes. She could articulate her thoughts and had no sensitivity to auditory and visual distractions or disturbance of persistence or pace. She was casually groomed with clean hygiene and able to adhere to basic standards of neatness and cleanliness. She was cooperative and open. (AR 590-594.)

Her next visit with Ms. Corcoran was on March 19, 2014, and at that time she discussed moving out and issues with her boyfriend and his parents. (AR 845-46.) She and her boyfriend saw Ms. Corcoran together on April 1, 2014. At that time, she had moved in with her brother, and they discussed maintaining their relationship under those circumstances. (AR 843-44.) On May 12, 2014, she discussed her living situation, and also her relationship with her prior husband and a violent incident, as well as issues she still had with her boyfriend and his parents. (AR 840-843.) On December 17, 2014, she related to Ms. Corcoran that she had moved out of her boyfriend's house, and he had been stealing and doing drugs. She described experiencing PTSD, and an inability to focus while working. (AR 837-38.)

In sum, the ALJ is correct that the record, and in particular Ms. Corcoran's treatment notes, contain minimal mental health status findings.

The ALJ's statement that the record reflects no significant social outbursts also appears consistent with the record. This finding goes towards Plaintiff's ability to function in her interaction with others. Plaintiff told Dr. Belen on August 27, 2013, that she was prone to emotional outbursts

during the day (AR 990); but, there do not appear to be subsequent reports of social outbursts. In addition, she reported to Dr. Donaldson that she had close friends that she talked to, and that she generally interacts well with others and denied any pattern of avoiding or arguing with people. (AR 589.) At that time, she was living with her brother and his family and her daughter without reported conflict. (AR 593.) Dr. Donaldson opined Plaintiff would only have mild to moderate difficulty responding appropriately to work pressure in a work setting and working in coordination with and in close proximity to others without conflict, distress, confusion or distraction. (AR 593.) Therefore, this was a legitimate reason for discounting Ms. Corcoran's opinions relative to Plaintiff's social functioning abilities.

The court will address the ALJ's finding that Ms. Corcoran's opinions were inconsistent with the treatment records indicating high activities of daily living below, as the discussion overlaps with the ALJ's similar conclusion with respect to Dr. Del Rosario.

Finally, the Commissioner is correct that Plaintiff did not argue in her motion that the ALJ erred in affording significant weight to the opinions of evaluating psychologist Dr. Donaldson or reviewing psychologists Drs. Roldan and Kotler. Specifically, Dr. Donaldson opined that Plaintiff had sufficient cognitive resources to sustain employment, although her psychopathology periodically reduces her emotional resources to a *moderate* degree. (AR 594.) The findings of the ALJ relative to those opinions, that have gone unchallenged, also support the ALJ's decision to afford little weight to the opinions of Ms. Corcoran and Dr. Del Rosario.

**3. Dr. Del Rosario**

**a. Dr. Del Rosario's Opinions**

Dr. Del Rosario sent a letter to the State on September 15, 2014, stating that Plaintiff was diagnosed with bipolar disorder and PTSD, was taking Latuda and Trazadone, and was unable to

work due to her illness. (AR 863.) On December 11, 2014, he filled out an essential tasks questionnaire stating that Plaintiff was limited in her ability to effectively communicate questions to others and/or follow instructions because she had periods of depression and was hearing voices. (AR 862.) When asked whether she could participate in tasks/activities for 20 or more hours a week, Dr. Del Rosario responded that she could participate in no tasks/activities, stating that she had not worked for about two years. (AR 862.) On March 13, 2015, Dr. Del Rosario also indicated that he adopted Ms. Corcoran's opinions. (AR 740.)

### b. The ALJ's Findings

The ALJ gave Dr. Del Rosario's opinions little weight. The ALJ recognized that Dr. Del Rosario was Plaintiff's treating psychiatrist, but found his opinions to be inconsistent with his own medical records that generally indicated no significant mental status findings, improvement with psychotropic medications, and only occasional reporting of auditory hallucinations. In addition, the ALJ found the opinions inconsistent with the record, which indicated high activities of daily living, including care for an infant/toddler, and non-substantial gainful activity work after the alleged onset date lifting up to 20 pounds for eight hours a day. (AR 36-37.)

### c. Analysis

First, the ALJ gave little weight to Dr. Del Rosario's opinions because they are inconsistent with his own records which generally indicated no significant mental status findings, improvement with psychotropic medications and only occasionally reporting of auditory hallucinations. The court finds these reasons to be supported by substantial evidence.

When Dr. Del Rosario first saw Plaintiff on October 22, 2013, he noted that Depakote was helping her mood swings. He described her as having normal eye contact, intact thought processes, intact attention and concentration, she was cooperative with spontaneous behavior, and she had

appropriate affect, present insight, and fair judgment. She had an anxious mood, but denied hallucinations. (AR 638.) On November 19, 2013, she was coherent with an appropriate affect, and less mood swings. (AR 636.) When he saw Plaintiff after her January hospitalization, she was depressed, and anxious with an irritable mood and tearful affect, but she denied suicidal or homicidal ideations, and also denied hallucinations or delusions. Her medications were adjusted. (AR 825.) On April 29, 2014, Dr. Del Rosario noted that Plaintiff was coherent with up and down moods and an appropriate affect. She was alert with an intact memory and denied suicidal/homicidal ideations and hallucinations. (AR 820.) While Dr. Del Rosario indicated that Plaintiff reported hearing voices on May 21, 2014, he described her as coherent, with up and down moods, appropriate affect, and alert with intact memory. (AR 818.)  On August 1, 2014, she reported that the voices had resolved, and Dr. Del Rosario described her as goal-directed, though with a tearful affect. (AR 813.) On September 15, 2014, she reported that her mood was better, though she was depressed with a tearful affect after describing being molested as a child. (AR 811.) She was hearing voices again when she saw Dr. Del Rosario on December 11, 2014, though they were less intense. (AR 809.) On March 4, 2015, she reported having less panic attacks and was less tired. She was goal-directed with an anxious mood and appropriate affect. (AR 807.)

The foregoing summary supports the ALJ's conclusion that overall Dr. Del Rosario's treatment records contain minimal mental status findings; that she frequently reported improvement with medications; and, that she only occasionally reported auditory hallucinations.

The ALJ also cited the fact that Plaintiff engaged in non-substantial gainful activity work after the alleged onset date as a reason for discrediting Dr. Del Rosario's opinions. Plaintiff acknowledges that she did testify that in 2013 she worked doing janitorial work at the Hard Rock, three days a week, for eight-hours a day, where she had to lift and carry more than 20 pounds. (AR

62.) It is unclear why she left that job, but she testified she also did some painting work for two weeks in March of 2013. Plaintiff argues that this evidence shows her inability to sustain full time work. The court agrees that the evidence could either be interpreted as demonstrating that she was not as limited as she claimed or that she was unable to sustain full time employment. When the evidence may be interpreted either way, the court may not substitute its judgment for that of the ALJ. *See Gutierrez*, 740 F.3d at 524 (citation omitted).

Finally, the court will address the ALJ's decision to give little weight to Dr. Del Rosario's and Ms. Corcoran's opinions on the basis that they are inconsistent with a record indicating high activities of daily living.

Plaintiff argues that her ability to perform some activities of daily living on her better days is not inconsistent with Ms. Corcoran's opinion she could not sustain similar functions on a regular and continuing full-time basis. Plaintiff relies on *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) to support her position.

*Garrison's* discussion was in the context of evaluating the ALJ's reasons for discrediting the claimant's symptom testimony. There, one of the reasons the ALJ rejected the claimant's pain testimony was that the ALJ found the claimant engaged in daily activities including talking on the phone, preparing meals, cleaning her room, and helping care for her daughter. *Garrison*, 759 F.3d at 1015. The Ninth Circuit concluded that the ALJ erred because the ALJ mischaracterized the claimant's testimony which "repeatedly emphasized that in performing many daily tasks, including caring for her daughter, she was heavily assisted by her mother." *Id*. at 1016. In addition, the claimant made clear she was "regularly prohibited by her pain from engaging in activities such as doing laundry, picking up her daughter, and carrying bags that weigh more than a few pounds." *Id.* Finally, the claimant had testified "that after performing such activities, she often must rest,

leading her to nap several hours per day." *Id*. The Ninth Circuit likewise found that the claimant's testimony was not inconsistent with the pain-related impairments she described. *Id*. In making the latter conclusion, the Ninth Circuit cautioned ALJs to be "especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id*. (citations omitted). Instead, the activities have a bearing on credibility when the level of activity is inconsistent with the claimed limitations. *Id*. (citations omitted).

The Ninth Circuit explained in *Molina v. Astrue*: "While a claimant need not vegetate in a dark room in order to be eligible for benefits, … the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" *Molina*, 674 F.3d at 1112-13 (citations and quotation marks omitted). "Even when those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally disabling impairment." *Id*. at 1113 (citations omitted).

Dr. Del Rosario and Ms. Corcoran opined, among other things, that Plaintiff could not perform any tasks/activities and also that there was marked restriction in activities of daily living. The ALJ concluded that their opinions were inconsistent with a record indicating high activities of daily living.

The court finds that the type of evidence that supported the Ninth Circuit's finding of error by the ALJ in *Garrison* is not present here. Dr. Del Rosario and Ms. Corcoran assert that she suffered from panic attacks, anxiety and depression that precluded her from working, but the record reflects she was able to care for her child, both while living with other family members, and while

living just with her daughter. She was able to drive until 2014, and then she was able to go places by taking the bus or getting rides. She was able to shop for herself and made meals for herself and her baby. She testified that when she stayed home she would focus on cleaning things. This is inconsistent with Dr. Del Rosario's findings that Plaintiff was precluded from engaging in any activities/tasks and Ms. Corcoran's finding that Plaintiff was unable to cope with any work.

The court has no doubt that Plaintiff's mental impairments affect her ability to function in the workplace, but the degree of impairment opined by Dr. Del Rosario and Ms. Corcoran, essentially that Plaintiff cannot perform any activities or interact with others, is not supported by the longitudinal picture of her mental health in her medical records. This conclusion is also supported by the findings of evaluating psychologist, Dr. Donaldson (and also the reviewing psychologists), which the ALJ gave significant weight.

**4. Conclusion**

In sum, the court finds that the ALJ did set forth germane reasons as to Ms. Corcoran and specific and legitimate reasons as to Dr. Del Rosario for giving little weight to their opinions that are supported by substantial evidence in the record. Therefore, Plaintiff's motion should be denied insofar as Plaintiff argues that the ALJ erred with respect to their opinions and in finding that Plaintiff did not meet or equal Listed Impairment 12.04.

**C. Plaintiff's Credibility**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability.

The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted) (emphasis original).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but stated that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (AR 32.) The ALJ cited inconsistencies in the record calling into question the reliability of Plaintiff's subjective allegations. First, the ALJ noted inconsistently good reports of activities of daily living that are greater than one would expect for a totally disabled person. The ALJ discussed the fact that Plaintiff was abled to drive from her alleged onset date until 2014; she was able to take public transit to go places; she could shop for groceries at stores; initially she lived with her infant daughter, the child's father and his family, but has lived alone with her daughter since the past year; she prepares meals, cleans her house, and cares for her daughter; she reported having no

1   difficulty with personal care, preparing meals for her and her daughter, doing laundry and going

2   out alone.

3        The court has already discussed the daily activities testimony and Plaintiff's argument that

4   *Garrison* requires a finding of error here. That analysis applies equally here, and the court finds

5   that the ALJ did not err in finding that Plaintiff's subjective symptom statements were inconsistent

6   with her daily activities.  Instead, the ALJ set forth clear and convincing reasons supported by

7   substantial evidence for discrediting Plaintiff's subjective symptom testimony.

8        Second, the ALJ noted that Plaintiff's work history showed she worked only sporadically,

9   which the ALJ found raised a question as to whether her continuing unemployment was actually

10  due to medical impairment. Plaintiff argues that this in fact supports her testimony regarding her

11  disabling limitations. Again, this evidence could be interpreted either way, and in such instance

12  the court may not supplant its judgment for that of the ALJ.

13       Third, the ALJ pointed out that Plaintiff testified she did not stop working due to physical

14  and mental impairments, but because she had a high-risk pregnancy.

15       Plaintiff acknowledges that she initially stopped working because of her pregnancy and not

16  due to her other impairments (ECF No. 15 at 15:18-19), but argues that the record shows that her

17  mental health worsened after the birth of her child in late 2012 and she was unable to go back to

18  work as a result of her impairments. The fact that Plaintiff initially stopped working due to her

19  high risk pregnancy was one factor the ALJ was entitled to consider in assessing Plaintiff's

20  credibility.

21       Fourth, the ALJ concluded that Plaintiff's treating records did not support her severe

22  allegations of disability, and instead describe conservative treatment and did not receive the type

23  of treatment one would expect for a totally disabled individual. Regarding her physical symptoms,

the ALJ noted that she had carpal tunnel release surgery and at the post-operative follow up appointment she reported improvement and that she was happy with the results. There were no further reports of ongoing symptoms or treatment. Nevertheless, the ALJ considered her testimony that she still hand symptoms in assigning her an RFC of light exertion with frequent handling or fingering. (AR 33.) Plaintiff does not make an argument relative to this finding insofar as her physical impairment to her hand is concerned. Instead, Plaintiff focuses on her mental impairments.

Plaintiff argues that the ALJ asserted that the medical evidence did not support her testimony but did not describe specific records in opposition to any of the specific limitations described. She asserts that her main disabling impairment is bipolar disorder, which naturally includes cycles of good and bad days and different types of moods.

The ALJ provided a detailed summary of the mental health treatment records, and then made the following findings: that overall, Plaintiff had minimal mental health status findings; she improved with psychotropic medications and counseling with only occasional auditory hallucinations, which reportedly resolved within 12 months of presentation of symptoms; and, while she had minimal mental status findings, the ALJ provided an RFC encompassing simple, routine tasks of unskilled and semi-skilled tasks, involving occasional and routine and brief interaction with others in a work setting. (AR 35.) The ALJ then discussed the findings of Ms. Corcoran and Dr. Del Rosario in detail and set forth specific reasons for assigning those opinions little weight. Finally, the ALJ discussed the psychiatric evaluation with Dr. Donaldson and the State agency psychological assessments. In sum, the ALJ concluded that the RFC assessment was supported by Plaintiff's testimony, her high activities of daily living, including care for an infant/toddler, the conservative medical record, consultative opinions and record as a

whole. (AR 36-37.) The court finds the ALJ adequately set forth clear and convincing reasons for finding Plaintiff's testimony inconsistent with the record.

Fifth, the ALJ stated that while Plaintiff alleged multiple side effects from the use of medications, the medical record did not corroborate those allegations. (AR 33.)

Plaintiff argues that the record does support her testimony that she experienced side effects from her medications. In the questionnaire Ms. Corcoran filled out, it asked the provider to describe any side effects that may have implications for working, and gives as examples, "dizziness, drowsiness, fatigue, lethargy, stomach upset, etc." Ms. Corcoran simply responded "all of the above" without providing any detail about the side effects and how they affected Plaintiff's ability to work. The record reflects that Plaintiff reported feeling bloated on Seroquel, but this medication was discontinued following that complaint. (AR 820.) She complained of weight gain and migraines while taking Depakote (AR 818, 982), but according to the records she stopped taking that drug as well. A review of the medical evidence supports the ALJ's finding that the alleged side effects from medications are not corroborated by the record.

In sum, the court finds that the ALJ set forth legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, and to the extent Plaintiff seeks remand on this basis, her motion should be denied.

**D. RFC and Past Relevant Work**

Plaintiff argues that her RFC finding allowed for unskilled and semi-skilled work, but not skilled work. She contends that the painter job identified by the ALJ is a skilled job, and therefore inconsistent with the assigned RFC.

The Commissioner argues that the VE testified Plaintiff could perform the painter work as she actually performed it, and the skill level provided by the DOT only goes to how the person

"generally performed" the work and is irrelevant to how she actually performed it. In addition, the ALJ found in the alternative, that Plaintiff could perform other jobs that exist in the national economy; therefore, even if the ALJ erred at step four, that error would be harmless in light of the alternative findings at step five.

If a Social Security claimant can still do past relevant work, he or she is not disabled. 20 C.F.R. § § 404.1520(f) and 416.920(f).To determine whether Plaintiff can return to his past relevant work the ALJ must ascertain the demands of the former work and compare it to the present capacity. 20 CFR 404.1520(e), 416.920(e); *Pinto v. Massanarii,* 249 F.3d 840, 844-45 (9th Cir. 2001). The claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation generally required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61).

The VE testified (and the ALJ adopted) that Plaintiff could perform her past relevant work as a painter as she performed that work. (AR 38.) The ALJ stated that Plaintiff reported performing this work at the light level from October 2006 to January 2007. (*Id*.)

In determining how the claimant's past relevant work was *actually* performed, the claimant "is the primary source for vocational documentation, and statements by [the claimant] regarding past work are generally sufficient for determining skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386. When the ALJ is determining how work is *generally* performed, the ALJ can rely on the descriptions given by the DOT or a VE. SSR 82-61, 1982 WL 31387.

Here, the VE relied on Plaintiff's testimony regarding how she performed her previous work as a painter in finding that Plaintiff could perform that work. The court agrees in this instance

that the specific vocational preparation (SVP) or skill level provided by the DOT for the painter occupation would be irrelevant because the VE found, and the ALJ adopted the finding, that Plaintiff could perform the past work as a painter as Plaintiff had performed it.

Therefore, to the extent Plaintiff argues that remand is appropriate on this basis, her motion should be denied.

**E. Hypothetical Questions to the VE**

Lastly, Plaintiff argues that the ALJ's hypothetical to the VE was incomplete because it omitted Plaintiff's credible allegations and limitations assessed by her treating providers.

In light of the court's finding that the ALJ's findings relative to Plaintiff's credibility and the opinions of her treating providers are legally sufficient, this final argument fails. Insofar as Plaintiff seeks remand on this basis, her motion should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Remand (ECF No. 15) and **GRANTING** the Acting Commissioner's Cross-Motion to Affirm (ECF No. 21).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

///

///

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 22, 2020.

William G. Cobb
United States Magistrate Judge